[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 11 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 12 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 14 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 15 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 16 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 17 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 18 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 19 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 21 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 22 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 23 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 24 
It is indisputable, that the defendant was not the tenant of either the owner of the life estate or of those entitled to the inheritance after its termination. This, therefore, was not an action of waste. It is the action of trespass as given by the Revised Statutes, which declare that a person seised of an estate in remainder or reversion may maintain an action of waste or trespass for any injury done to the inheritance, notwithstanding any intervening estate for life or years. (3 R.S. 5th ed., p. 39, § 8.) This section is identical with that of 1 R.S. p. 527, § 33. The defendant not being a tenant, the action of waste was *Page 25 
inappropriate, and the proper remedy was that of trespass for the injury done to the inheritance. In such an action it was unnecessary for the owner of the intervening estate for life or years to unite. The action of these plaintiffs, which they could not maintain at the common law, but which is given to them by statute only, is to recover the damage for the wrongful injury done to their inheritance by the defendant. (Livingston v.Mott, 2 Wend. 605.) The Revised Statutes also provide that every person who shall cut down or carry off any wood, underwood, trees, or timber, or shall girdle or otherwise despoil any trees on the land of any other person, without the leave of the owner thereof, shall forfeit and pay to the owner of such land treble the amount of the damages which shall be assessed therefor, in an action of trespass, by a jury or justice of the peace in cases provided by law. (2 R.S. 338, § 1; id. 5th ed. p. 624, § 1.) This section is compiled from section 29 of 1 Rev. L. p. 525, and by it the person offending was to pay treble the value of the wood cut or carried off. Under this statute it was held that the measure of damages, in cases coming within the act, is treble the value of the timber cut and carried away. (Newcomb v.Butterfield, 8 John. 342.) This rule was altered in the revision of 1830, by which the offender is to forfeit and pay to the owner of the land treble the amount of the damages assessed for the trespass. The revisers say in their notes that this alteration is made to conform the rule to the decisions of the supreme court. Under the section as it stood in the revised laws, the offender was to pay treble damages for trespasses committed without the leave or the permission of the owner of the land. InLivingston v. Mott (2 Wend. 605), the question was whether a person acting by the permission of the tenant in possession, or holding under him, and doing an injury to the estate of the reversioner, was liable to answer in damages to the reversioner in an action of trespass. And it was held that the acts done by the permission of the tenant *Page 26 
for years were to be deemed her acts, and for which the defendant was not liable in an action of trespass brought by the reversioner for an injury to the inheritance. If in the present case it had appeared that the defendant had cut down the trees upon these plaintiffs' land with the leave and permission of the tenant for life, this action could not have been maintained. No such fact has been found by the referee, and we are therefore to assume that no such leave or permission was given.
A more serious question is presented in the objection taken to the testimony offered on the part of the plaintiffs, to prove the damage to their inheritance. The injury seems to have been confined to the present damage to the farm, not, as it should have been, to the damage to the inheritance. These plaintiffs could not recover for any damage the life-tenant may have sustained by the acts of the defendant. A separate action on her behalf would be the appropriate remedy for any injury which she may have sustained. The plaintiffs' counsel asked this question of the witness: "Would the farm be worth more or less with the timber cut off?" This was objected to by the defendant, for these reasons: First, As irrelevant to the issue; second, As calling for a speculative opinion; and third, As assuming an improper test of damages. These objections were overruled, and the witness answered: "Less, I think." He was then asked: "How much less?" And this question was objected to on the same grounds, and the objection overruled, and the witness answered: "I should think about $400 less." It is apparent from these questions and answers, that the inquiry was made in reference to the present damage to the farm, including as well the damage to the life-tenant as that to the remaindermen. This was an irrelevant issue, and not the one before the referee for trial. It was the damage to the inheritance; and if such damage consisted in the cutting down and carrying away of trees or timber, then such damages were to be trebled. This *Page 27 
penalty being thus imposed, the inquiry should have been confined strictly within the statute, and to the damage solely to the inheritance.
Again, the question was objectionable as calling for a speculative opinion, and not for facts.
McGregor v. Brown (6 Seld. 114) was an action of waste, against a tenant for years, where the defendant sought to establish the converse of the proposition claimed by the plaintiffs in this action. He then insisted that the cutting of the trees was a benefit to the farm, and this question was put to one of his witnesses: "Do you consider the cutting of the timber a benefit to the inheritance?" It was admitted with much objection, and the witness answered: "I should consider it a benefit." EDWARDS, J., in his opinion, thought that the clearing of the woodland was, in itself, an act of waste; and whether it was so or not, was a question of law to be decided by the court, and not by the opinion of witnesses. Neither were the questions objected to admissible in reference to the amount of damages. DENIO, J., in his opinion, observes that a witness was permitted to swear that he considered the cutting of the timber a benefit to the inheritance. This was a violation of the rule, so often laid down within the last few years, excluding opinions except from professional and scientific witnesses, and upon questions of skill and science. (See Dewitt v. Barley, 5 Seld. 371, and cases there cited.) If it was incompetent to prove by witnesses their opinions of the benefit to the inheritance by the cutting of the timber, it is clearly so to prove the damages to the inheritance in the same way. In each case, it is the opinion of the witness which is called for, and it is too well settled that this cannot be done to need further illustration or argument. All the witnesses, on the part of the plaintiff, called to prove the injury done by the defendant, stated that they had formed an opinion as to the difference in the value of this farm in consequence of cutting down and carrying off this *Page 28 
timber; and, in their opinion, this difference in value was between $400 and $500. The opinions of the witnesses as to the extent of the damage, it is seen, were not admissible. Even if they were, the inquiry as to the damage was not the legitimate and proper one. It was not the difference between the value of the farm with the timber cut and what it would have been if left standing, but what was the extent of the injury to the plaintiffs' inheritance. It is obvious that there must be a marked and wide difference between the two. We have no means of judging of the probable duration of the life estate, but the reasons given by the witnesses for their opinions show that they were based upon their views of the present enjoyment of the estate. They manifestly regarded the plaintiffs as now entitled to that enjoyment, and they estimated their damages upon that hypothesis. In permitting this, it seems to me that the learned referee clearly erred, and the judgment appealed from should be reversed and a new trial ordered.